Yeah. All right, so, uh, we will hear 1st from Ms Dewitt. You may proceed when you're ready. Good morning. Your honors. My name's Caitlin Dewitt from social justice collaborative. I'm appearing on behalf. You get a little bit closer to the mic or speak up. So, thank you. I'm a little short. Good morning. You're actually I think you can move it towards you. Is that better? Absolutely. Thank you so much. Good morning. Your honors. My name is Caitlin Dewitt. I am from social justice collaborative appearing on behalf of petitioners. I'd like to reserve 3 minutes for rebuttal. May it please the court. I believe there are several reasons for remand in this matter. Counsel, I'm sorry to cut you off. I just I have a lot of questions. I just want to jump right on. Um, you know, I, we're looking here at a lot of family member issues as well. Um, have other family members come to the United States and have they sought asylum? In fact, 2 of petitioners brothers have sought asylum based on the same set of facts. And 1 is now a United States citizen since he was granted asylum. And 1 is a lawful permanent resident since being granted asylum. Okay. So both were granted asylum. Correct. Okay. And, um, I need a help clarifying some timeline here. So, when was the man who was charged with murder acquitted? Do you know? I'm not sure exactly when he was acquitted. I believe it would have been sometime between 2011 and 2013. I'm aware that the reason why he was acquitted was based on a threat towards petitioner's mother, who then chose out of coercion to. In essence, perjure herself and say that that is that was not the perpetrator and therefore he was acquitted. I believe that's the timeline. Okay. And then did Ms. 13 gang members threaten the aunt Elsa Martinez Cortez before, after, or during the trial of the man charged with Fidel's murder? That I'm not sure that there are facts in the record to establish that. Um, I am aware. Don't indulge me for just a moment. I'm not sure if that occurred. I am happy to look at that over during my, my short break. But, um. I do know that the petitioner's mother was threatened that, um, they would kill her and her family. And I do know that the answer on the mother's side. And then, um, the ants, I know petitioner's ants were also taken. Do you know, with respect to the trial, was that before, during or after the trial? That was after. So they were disappeared in 2015. Um, the record shows that petitioner witnessed several men dressed as police officers, clandestinely, um, abducting her aunts who lived next door. Um, they went to the police to say, why were they taken? Police said we don't have them. Um, and then in 2018, they were discovered and it was established that it was indeed her aunts. And then, um, the MS-13 gang member who gave the kill order for Fidel, uh, was that person ever prosecuted? And what was the outcome? I am not aware of the outcome of that, that matter. I guess, uh, to take to another step in the analysis, um, didn't the board, um, affirm entirely on the ground of nexus and avoid the cognizability and PSG questions? They, they avoided a lot of the, the elements of finding a nexus. So they, um, purely affirmed based on persecutory motive, which is a fact finding, um, question. Which goes, which would go to nexus. Which would go to nexus. Regardless of the cognizability of the proposed social groups, respondent has, has not established a nexus between the persecution and protected ground. Certainly, but I would contend that the cognizability of a social group, particularly the proposed social group in the context of the record informs the motive. And I think here that was ignored. So on the issue of motive and nexus, so motive is a factual issue that the BIA would review the IJ's determination for clear error, but nexus is a mixed question of law and fact that the BIA reviews de novo in light of the motivation finding, correct? That's correct. That's correct. Um, the, the BIA must, um, or rather the ultimate question of whether nexus has been established is a question of law that the BIA must review de novo. And in this case, um, they, they did not say that they reviewed it for clear error, but in fact they didn't review it at all, um, which would have also, um, it's not dispositive, the, the persecutory motive is not dispositive of whether nexus has been established. Did the IJ, uh, what were the IJ's findings on the motive underlying the nexus inquiry on the family and informant PSGs, if any? The, the IJ and affirmed by the BIA simply said that it was speculative, that the mountain of evidence that was presented, um, the murder of the military father who had, um, his not even an obituary, a newspaper article in the national newspaper where petitioner was named, um, a cousin was disappeared. Her aunts, um, her brothers were both threatened, um, and of course her mother. So they, um, they looked at these separately and just said they're speculative, which is a conclusory statement. Well, I guess, let me, going to the, the, the IJ's decision, um, with respect to police informants, as, as I read it, uh, the IJ found that the evidence is insufficient to establish respondents membership in the proposed group. Uh, and as to the, um, family group, um, then they get to the, the, the PSG part, but, um, I'm, I'm struggling to find where the, uh, there is a factual finding in the IJ that could provide the basis for the board's nexus determination. Well, I would contend that on the, the family PSGs groups two through five, as it's defined, um, the IJ made a categorical decision that those were not cognizable due to the BIA precedent at the time, matter of LEA, um, two specifically, um, which was since vacated at the time that the board issued their decision, their affirmance. But LEA, LEA is not a nexus case. LEA is regarding the cognizability of a family-based PSG, particular social group. Right. And as to the, the family-based PSG, I think the, the board cites the, um, uh, the IJ in its decision, um, at ER-5, the finding that the evidence suggests that gang members saw her immediately family members as threats to their criminal enterprise or sought to recruit her immediately family member, her immediate family members to further their criminal enterprise. Um, I think the board is reciting that as to, um, other groups, but that kind of sounds like a finding that suggests a family-based motive, um, that would cut the other way, right? I think. Would cut toward a finding of nexus with respect to family groups. Correct, because, um, the, the personal retribution, the threat was based on the family. The father was military who went after gangs, and then it just went on from there. These are all interconnected, particular social groups with the police informants based on the, um, murder of her father and the disappearances of the aunts. Um, I would also say that I, I think the BIA's analysis here ignores mixed motive. So, we've dismissed the, the amount of evidence here to say that it's speculative, it's speculatory, and the evidence is just to further criminal enterprise. I don't think that's faithful to the record. Well, whether it's faithful to the record or not, the board isn't in a position to make findings that the IJ has not. Let me rephrase. The, the board must conduct an analysis to consider whether there is, um, a cognizable PSG and whether there is the link between the protected ground, the PSG, and the harm. And they have looked at persecutory motive for clear error, but they failed to go that extra step to look at it in the aggregate to, um, to have that background inform whether or not there is a nexus established. As to the persecutory motive, um, again, what, I, I'm struggling to find what it could have reviewed in the IJ's decision for clear error with respect to the, the family, uh, informant pieces. Again, to, to be clear, I think this helps you, but I'm, I'm trying to understand your arguments. Our argument is more so that the BIA failed, made a legal error in not conducting the de novo analysis. As far as the clear error, I do contend that there is substantial in the record that does compel the conclusion that, um, there was persecutory motive. And, um, the, the IJ saying that these were all just personal retribution, these were individual instances, whether they were connected as speculatory, I think that is, um, that is a question that, or, I'm sorry, would be, um. But it, did it say anything about that, about the family or informant groups? The BIA? No, the, the IJ. The family groups, no, because again, um, she, she categorically denied it based on the, since, well, since vacated president at the time, um, and discussed whether they were perceived. And again, here, um, she discusses the, the single news article, um, the reporter taking this statement, et cetera, to say that that does not sufficiently persuade the court, but that would be reviewed for clear error. But again, substantial evidence in the record shows that those actually support a finding of a family PSG, according to Ninth Circuit President Rios V. Lynch, et cetera. I believe, um, Your Honors, there's also the, the issue of the BIA relying on vacated law in the first instance. Um, at the time that the board made its decision, matter of LEA-2 was no longer good law in, uh, February 2025. And it's, you know, longstanding precedent that the BIA is required to apply the law existing at the time of its review, even if different from law applied by the immigration judge. So there, again, we have the error of not conducting a de novo analysis review of the family PSGs, um, because at the time they should have conducted a case-by-case analysis under Rios V. Lynch as families, the quintessential social group. If Your Honors have no further questions, I'll reserve the rest of my time. All right. Thank you, counsel. Thank you. We will hear next, um, from Ms. Aldana. Good morning, Your Honors. May it please the court, Sir Aldana, behalf of the Attorney General. The government asked the court to deny the petition for review as there's substantial evidence to establish that the agency's decision that there was no nexus at all to any protected ground here. Um, regarding the clear error review, the board, uh, here clearly, uh, applied the clear error review to the factual findings of motive here. Where is, where are the factual findings of motive as to the family group in the IJ's decision? So if you look to page 8 of the immigration judge's decision, this is page 97 of the record. It's kind of the bottom paragraph where it says here the respondent claims the MS-13 gang targeted her because the gangs believe she supported the police and was communicating with the police. Um, she then argues that the perceived, um, supported demonstrated opposition to the gang. And then the immigration judge says based on the evidence of the record, respondent has not sufficiently shown that she holds or was believed to have held a political opinion or any sort of imputed political opinion. Okay. But that's, that's political opinion. I was asking about family and at the top of, uh, page 8, uh, the IJ says that in responding to the Salvadoran women PSG, the IJ seems to find that MS-13 gang members saw respondents immediately, immediate family members as threats to their criminal enterprise or sought to recruit them further to further their criminal enterprise. That sounds like a finding with respect to, to defeating one PSG nexus that, uh, can only be read to support a family nexus. Why, why am I reading that wrong? In furtherance of criminal enterprises is not a protected ground. It's not, the immigration judge isn't finding that, uh, the family was being harmed for their relations to being a family. Well, I, I, I guess that depends on how you read the first part of the sentence that the, but, but so if, if, if we're not to find that the, um, the passage on the top of page 9 is enough to do it for family members. I'm sorry, the passage you'd read, read me, that seems to go to political opinion. So is there anything else I should look for to figure out whether there's, um, a fine and a family member, um, motive that would support the BIAs nexus determination? I'll probably ask you the same thing with respect to the police informants again, because I, as I take it, the IJ did not make, uh, uh, the police informants is, uh, just a paragraph. And the IJ's finding is that the evidence is insufficient to establish respondents membership in the proposed group. But again, the board relied on nexus. So how does that work? Right. So what I'm saying is that the paragraph that I highlighted is mentioning the, her, uh, imputed police, her supporting the police or her being viewed as supporting the police would be, would, which would be a police informant. Right. You're looking at the carryover from 8 to 9? Yes. But what's notable about that is at the end, um, there's a cross-reference back to the motivation finding that is at the top of page 8. Um, so there's a cross-reference back. So in the context of discussing the proposed group of Salvadoran women, that's where the IJ walks through the findings of, um, motivation. Says that the various family members were seen as threats to the criminal enterprise and then goes through each of the family members and makes her finding as to what's been shown with respect to each family member. They say that this one was targeted for this, the brother for that, and finds it all kind of disparate and doesn't add up. So that's the motivation finding that's then cross-referenced in the other part. Am I reading this correctly? That's correct, Your Honor. So these are, I would argue that these are the factual findings of the immigration judge regarding the family, um, and how their, their, all of their harms are disjointed and disconnected from one another. One, the brother's was based on recruitment. The aunt's, it's, their motive for their murders is unknown. Um, even in the declaration of, uh, or the petitioner's testimony, she's asked if, um, the murders of her aunts were tied to her father and she testifies that she's unsure. That's on page 171 of the record. As well as the declaration of the brother indicates that he does not know if the death of his aunts were related to his father. Um, so these would be the factual findings related to the family, um, in determining that they're disjointed and that they were not connected to one another. And petitioner was never threatened for her familial connection or for her father's military ties. Well, I see your first point. I'm still, I guess, struggling to understand that the second point that, that goes to the, that they would have to support a BIA nexus finding. So there's a difference between saying that the, the group may not be cognizable, um, and, and your friends have, have raised, um, questions about that. But, um, cognizability is just, requires different predicates than nexus. Um, and so the fact that the family members, um, may all kind of have, um, different, um, be differently situated with respect to the, the threats in light of the IJs finding that the gang saw respondents family as threats to their enterprise. Um, you think that's your position is that's enough to support a blanket, no nexus determination by the board? Because the nexus that they're claiming is that they're related to one another or that they have a, or that she has a political opinion because of her father's military stance or has an imputed political opinion. So the next. Okay. Um, I take, what about the informant then the informant group? Uh, it would be the same reasons of petitioning or was never an, it was never an informant. She never testified in court. Uh, that goes to membership. Um, but right. So why is that enough to support nexus? Right. So, so my argument would be then you're saying that the immigration judge, um, addressed nexus for, for police informant in this paragraph. Although I'm saying, I'm, I'm actually saying that I don't think that it did. I'm saying that. Yeah. I'm arguing that this paragraph is the, is the immigration judge identifying police informant that she, that there is insufficient evidence to establish or insufficient facts within the record. To establish that her persecutors ever viewed her as a police informant or imputed a police informant, uh, perspective on her. Which can you point me to the words that you're, you're cleaning that from. So the, the very first sentence here, respondent claims that Ms. 13 gang targeted her because the gangs believe she supported the police. And was communicating and was communicating with the police. So that, that would be, um, alluding to a police informant, right? And then the, so the immigration judge is talking about political opinion and, uh, police informant in this paragraph. And it's applying the same facts to both of those protected grounds that, um, either Isaac or Miguel has never identified or imputed. Or within their care, their behaviors or stated anything that she had any sort of, um, police informant or political opinion. It was rather just the personal dispute regarding child support. Um, and the record, the record is, is clear on that, that Miguel stated that he, he wanted her to remove the complaints because he did not want to get police involved. Well, so I guess trying to figure out how to put this together and, and add up these disparate sentences across into sufficient findings for the board to rely upon. Um, later on in withholding, and this is at 12 of the IJ's decision, ER 101. Makes the observation that even under the lower nexus standard for withholding of removal, um, right? So kind of setting aside the lower, the, the, the nexus standard, the court finds that respondent has not established a cognizable social group. Um, so again, that, that I, I guess in terms of I'm trying to understand, um, whether that's the best reading of the IJ's decision is to have, um, engaged in motives underlying nexus, at least with respect to the, the two sections on family and police informant that, um, um, that don't specifically. Um, don't clearly call out motivation. Well, I, I would say that the next sentence further respondent failed to establish that she held a political opinion or that the assailants imputed one onto her. I'll grant you that, but, but that doesn't go to family or, um, informant. Oh, yeah. Well, I, I would argue that, um, that paragraph under Salvadoran women would be the factual findings, um, for the family. Um, and then the, the board applied de novo review and applied the correct, uh, legal standard and determined, well, determined that those, those factual findings were not clearly erroneous and then applied its own de novo review. So I, I would argue that the, the, the meat of the immigration judge's factual findings would be on in that paragraph, which just to be clear, the paragraph, uh, under Salvadoran women nexus determination at the top of page eight. Yeah. Okay. Just overall, in this case, there's just simply no nexus to protected ground that the only the only reason for the harm here for the, this petitioner was a personal dispute regarding child support and, um, just gang violence regarding her family's harm. If there are no other questions, government asked the court to nine petition for me. All right. Thank you. Council. We'll hear rebuttal now. Your honors. Um, I would start by, by pointing out something that, um, the government made a point that, um, political opinion and police informant are separate protected grounds. There's political opinion and there is particular social group membership, not particular social group. And the fact that police informant was not analyzed for its cognizability, um, you cannot substitute political opinion for the cognizability of that social group, um, further. And why, why is that? Why wouldn't those overlap? Because you're on our, uh, police informants or witnesses, et cetera. However, it's contemplated by Enrique's rebus. Um, you still have to consider immutability, social distinction. You don't need that in political opinion. Political opinion is whether you have it or not, or whether you are perceived to have it on the question of nexus. I mean, your opponent's argument is that the IJ discussed the two together in this carryover paragraph from eight to nine, which starts with the claim. It addresses jointly the claim that respondent claims that the MS 13 gang targeted her because the gangs believe she supported the police, which would be a political opinion. Uh, or at least that was her theory and was communicating with the police, which is being an informant. Um, so it seemed to just say, these are kind of related and she decided to discuss them together and then explained and ended with no nexus and cross-reference her discussion in the context of Salvadoran women as well. There were my findings on motivation. And to that, I would also say regarding her analysis of Salvadoran women, um. She then goes on to say, considering the entire record, Ms. 13 gay members saw immediate family members threats, et cetera. It's almost as if she is dismissing Salvadoran women as as the nexus in favor of a family PSG. And I think we're back to where where we were starting. Um, I think the is that is she she's you read this paragraph at the top of it. Page eight is finding a nexus based on family social group. It seems the opposite. She picks them apart and says, you know, this one was for this reason. This one's for another. This hasn't been shown this. She's saying, as counsel described to their role, disjointed. So it doesn't add up to a family based motivation. It is just over the course of however many years they went after different members of this family for their individual different reasons. Of course. And I see your honor's point. It's more so that cumulative effect review must be undertaken and must be undertaken. Cumulative effect review. And in these cases, you know, the reason for that is because the harm, each additional harm compounds on the other and relates back. I don't see personally how the record shows that these aren't related incidents. I do understand that is a fact finding question. However. By not looking at these in the aggregate, by separating them, she was able to. Say that this did not amount to. A persecutory motive.  All right. Thank you, counsel. The case just argued will be submitted.
judges: COLLINS, JOHNSTONE, ALBA